IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: ALTHEIMER & GRAY, | ) | |
| Debtor. | ) ) ) | 07 C 4503 |
| | ) | |
| DAVID AYRES and CHRISTOPHER GREW, | ) ) | Hon. Charles R. Norgle |
| Appellants, | ) ) ) | On Appeal from the United States Bankruptcy Court for the Northern District of Illinois |
| v. | ) ) | |
| DEVELOPMENT SPECIALISTS, INC., as creditor trustee for the ALTHEIMER & GRAY CREDITOR TRUST, | ) ) ) ) ) | Bankruptcy Case 03 B 43547 |
| Appellee. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is the bankruptcy appeal of David Ayres and Christopher Grew ("Ayres and Grew"). Ayres and Grew challenge a final order of the United States Bankruptcy Court disallowing their proof of claim, Claim No. 270. Ayres and Grew also challenge the Bankruptcy Court's denial of their motion for reconsideration. For the following reasons, the decision of the Bankruptcy Court is affirmed.

### I. BACKGROUND

**A. Facts**

Prior to the instigation of this bankruptcy case, the Debtor Altheimer & Gray ("Altheimer") was an international law firm based in Chicago, Illinois. Altheimer maintained

1

eight overseas offices, including one in London, England. In March 1997, Ayres and Donald Guiney, as partners in a British venture, entered into a contract (the "Lease") with the Prudential Assurance Company Limited ("Prudential") for the lease from Prudential of office space in London. In June 2001, Ayres and Grew, Altheimer, and Prudential entered into a License to Assign Underlease (the "License"). Under the License, Ayres and Grew received permission from Prudential to assign the Lease to Altheimer. Ayres and Grew then assigned the unexpired term of the Lease to Altheimer pursuant to an Assignment. The Assignment and the Lease imposed, *inter alia*, the following obligations: Altheimer agreed to pay Prudential the rent due under the Lease; Ayres and Grew agreed to indemnify Prudential if Altheimer defaulted on the Lease; and Ayres and Grew agreed to reassume the Lease if Altheimer disclaimed the Lease.

Prudential and Altheimer also entered into a Supplemental Deed in June 2001. Pursuant to the terms of the Supplemental Deed, Prudential could only seek recovery from Altheimer itself, and not its individual partners, if Altheimer breached its obligations to Prudential, and, in the event of Altheimer's liquidation, Prudential would not be entitled to any payment from Altheimer's individual partners. The Supplemental Deed therefore limited Altheimer's potential liability under the Lease to Altheimer itself; liability did not extend to its individual partners. The rectitude of the Supplemental Deed was apparently never raised in the Bankruptcy Court proceedings.

## B. Procedural History

On October 24, 2003, Altheimer entered bankruptcy proceedings in the Northern District of Illinois. Shortly thereafter, the Bankruptcy Court entered an order authorizing Altheimer to reject the Lease. Prudential then filed a proof of claim for lease rejection damages in the

approximate amount of $1.1 million. Prudential also brought suit against Ayres and Grew in London seeking to recover on Ayres' and Grew's guarantee of the Lease pursuant to the License. Ayres and Grew then filed a claim in the approximate amount of $3.8 million against Altheimer seeking indemnification from Altheimer for any liability it might have to Prudential arising from Altheimer's rejection of the Lease.

The Bankruptcy Court confirmed a liquidation plan for Altheimer. The plan was funded by contributions from Altheimer's former partners, provided that those contributions would be divided between Altheimer's creditors, and also provided that a Trustee would be appointed who would make distributions to creditors and object to any improper claims. Among the claims to which the Trustee objected were the claims that Prudential and Ayres and Grew filed.

In the London proceedings, Prudential asked the English court to (1) require Ayres and Grew to accept a new lease of the office space formerly leased by Altheimer, and (2) to find that Ayres and Grew were liable to Prudential as guarantors in the amount of £ 1.3 million. The English court denied Prudential's guarantee claim, but never issued a ruling on Prudential's new lease claim. Despite having prevailed in this proceeding, Ayres and Grew agreed to pay Prudential £ 286,500 for the remaining period of the Lease, and £ 195,000 for dilapidation of the premises.

On April 18, 2007, the Bankruptcy Court denied Prudential's claim. The Court reasoned that the Supplemental Deed barred Prudential from recovering from Altheimer's estate, as the assets from which the Trustee would be required to pay Prudential consisted entirely of contributions from Altheimer's individual partners.

Ayres and Grew ultimately sought indemnification from Altheimer for Ayres' and Grew's payment of £ 481,500 to Prudential. On June 27, 2007, the Bankruptcy Court entered an Order disallowing this claim. Instead of issuing a written opinion, Bankruptcy Judge Carol A. Doyle read her decision into the record. Ayres and Grew now appeal Judge Doyle's June 27, 2007 Order disallowing their indemnification claim against Altheimer, and Judge Doyle's denial of Ayres' and Grew's motion to reconsider.

The parties have submitted written briefs, and this court heard oral arguments on August 29, 2008. This bankruptcy appeal is fully briefed and argued, and is before the district court.

## II. DISCUSSION

### A. Standard of Review

District courts have jurisdiction to review decisions of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). When adjudicating bankruptcy appeals, district courts are to apply a dual standard of review: the Bankruptcy Court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*. In re Midway Airlines, 383 F.3d 663, 668 (7th Cir. 2004); In re Smith, 286 F.3d 461, 464-65 (7th Cir. 2002); In re Vita Corp., 380 B.R. 525, 526 (C.D. Ill. 2008).

### B. The Decision of the Bankruptcy Court is Affirmed

#### *1. The Bankruptcy Court's Decision*

After explaining the factual and procedural background to the case, Bankruptcy Judge Doyle analyzed what she termed "The Ayres and Grew Claim," the claim at issue in this appeal. In this claim, Ayres and Grew sought indemnification from Altheimer for the £ 481,000 they submitted to Prudential for the remainder of the lease, and dilapidation of the premises. The

4

Trustee argued that because Prudential's claim was disallowed, Ayres' and Grew's claim must also be disallowed as a contingent claim for reimbursement under section 502 (e)(1) of the Bankruptcy Code. That statute provides:

> Notwithstanding subsections (a),(b) and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that –
> (A) such creditor's claim against the estate is disallowed;
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or
> (C) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.

11 U.S.C. § 502(e)(1). Ayres and Grew asserted that their claim against Altheimer was independent of Prudential's claims because Ayres and Grew were entitled to enforce their claims against Althheimer's individual partners, while Prudential was not able to do so due to the terms of the Supplemental Deed.

The Bankruptcy Court found the Trustee's argument persuasive. The Court first determined that the Ayres and Grew claim was a claim for reimbursement within the meaning of § 502(e)(1). Judge Doyle made this determination based on the express provisions of section 3.3 of the Assignment, which provides that the debtor will "pay the reserved rent and perform and observe the tenant's [Ayres' and Grew's] covenants and conditions contained in the lease, and will at all times keep the assignor indemnified against all proceedings, costs, claims and expenses whatsoever in respect thereof." The Assignment thus gave Ayres and Grew a claim to indemnification, which, the Court determined, was the equivalent of a right to reimbursement. Judge Doyle cited relevant case law and other authority in support of this proposition. In re

5

Regal Cinemas, Inc., 393 F.3d 647, 650 (6th Cir. 2004) (quoting In re Pacor, Inc., 110 B.R. 686, 690 (E.D. Pa. 1990)) (interpreting § 502(e)(1)) ("Analytically, indemnity is the same as reimbursement. One contractually provides for the reimbursement of loss incurred by another by indemnifying her."); In re Pettibone Corp., 162 B.R. 791, 809 (Bankr. N.D. Ill. 1994) ("A claim for indemnification, as well as contribution, has been considered to be for 'reimbursement' within the meaning of § 502(e)(1)(B)."); 4 COLLIER ON BANKRUPTCY, ¶ 502.06[2][a] ("Claims for reimbursement include indemnity claims.").

Judge Doyle went on to explain that there was no other logical manner in which to interpret the indemnity provision of the Assignment.

> If this court were to hold that Ayres' and Grew's claim was separate and distinct from Prudential's claim, Ayres and Grew would have the right to pursue the debtor for breach of the assignment, even if they never had to pay Prudential anything. Essentially, it would give Ayres and Grew the right to be indemnified for nothing. Instead, the word 'indemnified' requires by its very definition that Ayres and Grew actually have to pay something to Prudential before their right to payment from the debtor can attach. For purposes of section 502 (e), it does not matter that Prudential waived its recourse against all Altheimer's partners, while Ayres and Grew did not. No matter how Prudential has modified or limited its rights under the lease, Ayres and Grew cannot recover from the debtor or its partners anything more than what Prudential recovered from Ayres and Grew. Whether or not Ayres and Grew entered into the supplemental deed, their right to payment from the debtor is limited to the amount they are compelled to pay Prudential for damages arising out of the rejected assignment.

Tr. of Proceedings before the Hon. Carol A. Doyle, June 27, 2007, at 15-16.

Ayres' and Grew's argument that it was inherently unfair to prevent them from recovering against Altheimer simply because Prudential entered into the Supplemental Deed under which it gave up its right to recover from Altheimer's partners, was unavailing. Judge Doyle determined that the plain language of § 502(e)(1) did not contain any exception for

guarantors and "unequivocally" required the Court to disallow claims for reimbursement where the underlying claim was disallowed as it was in this case. Id., at 16-17.

Judge Doyle went on to explain that § 502(e)(1)(B) provided a separate reason for disallowing Ayres' and Grew's claim. Under that provision, a claim for reimbursement must be disallowed if the claim "is contingent as of the time of allowance or disallowance of such claim . . . ." 11 U.S.C. § 502(e)(1)(B). Because the English court held that Ayres and Grew did not owe Prudential anything for damages arising from Altheimer's defaults, Ayres and Grew failed to substantiate that any amounts they paid to Prudential were paid as a result of their guarantee of Altheimer's obligations. Judge Doyle therefore determined that § 502(e)(1)(B) precluded Ayres' and Grew's claim as well.

### 2. *De Novo Review*

After conducting its *de novo* review, see In re Midway Airlines, 383 F.3d at 668, the court determines, for the following reasons, that Judge Doyle did not err when she disallowed Ayres' and Grew's claim.

During oral argument before the district court, both parties clearly indicated that the Bankruptcy Judge's application of § 502(e)(1)(A) to the Ayres' and Grew's claim was the heart of the matter at issue. Counsel for Ayres and Grew first made this assertion.

MR. MILLAR: [Section] 502(e)(1)(A), which is the section that was used to disallow our claim, has specific elements. The trustee must carry the burden on those elements. Tr. of Proceedings before the Hon. Charles R. Norgle, Sr., Aug. 29, 2008, at 18. Later, in response to the court's questioning, counsel for the Trustee agreed that § 502(e)(1)(A) was the controlling statute in this case.

> THE COURT: Let me make a point here. On page 17 of the transcript [of Judge Doyle's June 27, 2007 decision], which more or less constitutes the opinion of the final order of the bankruptcy court, on page 17, line 21, Judge Doyle says, 'Thus there is no unfairness to Ayres and Grew from disallowing their claim under Section 502(e)(1)(A) because Prudential's underlying claim was disallowed. The Ayres and Grew claim falls squarely within the scope of Section 502(e)(1)(A) and must, therefore, be disallowed.' Is that the final and ultimate point of this opinion?
> MS. STEEGE: Yes, your honor, it is. The reason why Judge Doyle denied their claim was because Prudential's claim had been denied ... The plain language of [§ 502(e)(1)(A)] unequivocally requires the Court to disallow any claim for reimbursement if the underlying claim is disallowed.

Id. at 21.

Section 502(e)(1) contains three separate limits on claims for reimbursement or contribution submitted by entities who share liability with the debtor. "These restrictions on claims made by co-liable parties work to prevent co-debtors from achieving more favorable terms than the underlying creditor, from competing with the creditor for the remains of the bankrupt's estate and from asserting both a subrogation and a reimbursement claim." In Re Regal, 393 F.3d at 650. In examining the legislative history behind § 502(e)(1)(A), Judge Mukasey of the Southern District of New York observed that this statute "reflects 'a policy that a surety's claim for reimbursement or contribution is entitled to no better status than the claim of the creditor assured by such surety.'" Chase Manhattan Bank, N.A. v. Francini, No. 91 C 2515, 1991 U.S. Dist. LEXIS 11381, at *12 (S.D. N.Y. 1991) (quoting 124 Cong. Rec. H11,094 (Sept. 28, 1978); S17,410 (Oct. 6, 1978)). Section 502(e)(1)(B) is similarly intended to protect "debtors from multiple liability on contingent debts." In re Eagle-Picher Indus., Inc., 131 F.3d 1185, 1187 (6th Cir. 1997).

Under § 502(e)(1), the court must first determine two threshold matters: whether the claim at issue in this case is one for reimbursement or contribution, and whether Ayres and Grew

8

were co-liable with Altheimer. Ayres and Grew, at oral argument before this court, admitted that their claim was "one for reimbursement or contribution." Tr. of Proceedings before the Hon. Charles R. Norgle, Aug. 29, 2008, at 6.

Ayres and Grew, however, dispute that they are co-liable with Altheimer to Prudential, as Prudential, by means of the Supplemental Deed, has waived its right to recover from Altheimer's partners. The Bankruptcy Court found this argument unavailing, as does this court.

Section 6 of the License provides, *inter alia*:

6.1 [Ayres and Grew] shall pay to [Prudential] on demand and indemnify [Prudential] against all reasonable and proper costs [,] charges [,] fees [,] disbursements and expenses . . . incurred directly or indirectly by [Prudential] in connection with this License or the Assignment.

\* \* \*

6.5 if the Underlease is disclaimed prior to any lawful assignment by [the Debtor] of the Underlease [,] [Prudential] may within six months after the disclaimer require [Ayres and Grew] to accept a new Underlease of the [London office] for a term equivalent to the residue which if there had been no disclaimer would have remained on the Term at the same and subject to the like covenants and conditions as are payable under and applicable to the tenancy immediately before the date of such disclaimer . . .

6.6 if the Underlease is disclaimed and for any reason [Prudential] does not require [Ayres and Grew] to accept a new Underlease of the [London office] in accordance with Clause 6.5 [Ayres and Grew] shall pay to [Prudential] on demand an amount equal to the difference between any money received by [Prudential] for the use or occupation of the [London office] less any expenditure incurred by [Prudential] in connection with the [London office] and the rents which would have been payable under the Underlease but for such disclaimer . . . .

This Section of the License makes it clear that Ayres' and Grew's liability to Prudential is determined by the extent of Altheimer's failure to perform under the Lease. There is no question that, but for Altheimer's right to reject the Lease under the Bankruptcy Code, Altheimer would have been liable to Prudential for the remainder of the Lease. Only when Altheimer rejected the Lease did Prudential's potential claim against Ayres and Grew arise. In other words, Section 6 of

the License made Ayres and Grew co-liable with Altheimer to Prudential. See In re McCoy, 355 B.R. 69, 75 (Bankr. N.D. Ill. 2006) ("The phrase 'liable with the debtor' has been interpreted to be broad enough to encompass any type of liability shared with the debtor."); In re Baldwin-United Corp., 55 B.R. 885, 890 (Bankr. S.D. Ohio 1985).

Having determined that Ayres' and Grew's claim is one for reimbursement, and that Ayres and Grew are co-liable with Altheimer to Prudential, this court reviews the Bankruptcy Court's finding that Ayres' and Grew's claim must be disallowed under §§ 502(e)(1)(A) and (B). The parties do not dispute that Prudential's claim against the estate was disallowed. Under the plain language of § 502(e)(1)(A), Ayres' and Grew's claim must therefore also be disallowed. "It is well established that 'when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'" Lamie v. United States Tr., 540 U.S. 526, 534 (2004) (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)).

In addition, the court finds no error in Judge Doyle's determination that Ayres' and Grew's claim must be disallowed as a contingent claim under § 502(e)(1)(B). The English court did not determine that Ayres and Grew were liable to Prudential for any "new lease" or "dilapidations." Counsel for Ayres and Grew acknowledged during oral arguments before this court that Ayres and Grew voluntarily paid those funds to Prudential. Tr. of Proceedings before the Hon. Charles R. Norgle, Aug. 29, 2008, at 15. Ayres' and Grew's obligation to pay for a "new lease" and "dilapidations" had not been finally established by any court, and the Bankruptcy Court correctly recognized this. See In Re McCoy, 355 B.R. at 75 ("A contingent claim has been defined as a claim which has not yet accrued and which is dependent upon some

10

future event that may never happen.") (citing In re Bonnett, 158 B.R. 125, 127 (Bankr. C.D. Ill. 1993)). Ayres' and Grew's claim therefore fell within the purview of § 502(e)(1)(B), and the Bankruptcy Judge correctly disallowed the claim under that statute.

During oral arguments before this court, counsel for Ayres and Grew asserted that the decision of the English court had been reversed on appeal, but the court considers this assertion waived, as it was not presented in the appellant's brief. This court will not consider, as it explained during oral arguments, any decisions of the English courts that were not included in the record prior to Bankruptcy Judge Doyle's decision of June 27th, 2007.

In closing, the court notes that it finds the Bankruptcy Court's application of § 502(e)(1)(A) to be dispositive of this case. Under the plain language of that statute, Ayres' and Grew's claim for reimbursement must be disallowed because they are co-liable with Altheimer to Prudential, and the Bankruptcy Court disallowed Prudential's claim. Whatever the ultimate decision of the English courts may have been, it would thus not have changed the outcome of this Bankruptcy Appeal in the Northern District of Illinois.

### III. CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is affirmed.

IT IS SO ORDERED.

ENTER:

_____
Charles R. Norgle, District Judge

Dated: September 17, 2008